IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| DIANA M.,[1] <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | § <br> § <br> § <br> § <br> § <br> § CIVIL ACTION NO. 5:19-CV-258-BQ <br> § <br> § <br> § <br> § <br> § |

## REPORT AND RECOMMENDATION

Plaintiff Diana M. seeks judicial review under 42 U.S.C. § 405(g) of the Social Security Commissioner's decision denying her application for supplemental security income. The United States District Judge transferred this case to the undersigned United States Magistrate Judge for further proceedings. ECF No. 4. The parties did not unanimously consent to proceed before a magistrate judge. The undersigned has considered the parties' briefing and arguments, the administrative record, and applicable law, and in accordance with the order of transfer, makes the following Report and Recommendation to the United States District Judge. Specifically, the undersigned recommends that the district judge reverse the Commissioner's decision and remand this action for further proceedings consistent with this Report.

### I. Statement of the Case

Plaintiff filed an application for supplemental security income benefits on July 3, 2017, alleging a disability onset date of January 1, 2017. Tr. 15, 135. The Social Security Administration (SSA) denied her application on November 10, 2017, and again upon reconsideration on December 22, 2017. Tr. 67, 75. Plaintiff then requested a hearing before an administrative law judge (ALJ).

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies Plaintiff only by first name and last initial.

Tr. 15. Represented by counsel, Plaintiff appeared and testified before an ALJ on September 25, 2018. Tr. 15, 26–38. A vocational expert (VE) also testified at the hearing. *Id.*

The ALJ determined on February 21, 2019, that Plaintiff was not disabled because she "is capable of performing past relevant work." Tr. 21 (emphasis omitted). The Appeals Council denied Plaintiff's request for review. Tr. 1. As a result of the denial, the ALJ's decision became the Commissioner's final decision and is therefore properly before the Court for review. *Sims v. Apfel*, 530 U.S. 103, 107 (2000); *see also Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) (holding that the Commissioner's final decision necessarily incorporates the Appeals Council's denial of a claimant's request for review).

## II. Standard of Review

A court reviewing the Commissioner's denial of social security benefits is limited to determining whether: (1) the decision is supported by substantial evidence in the record; and (2) the Commissioner applied the proper legal standards. *See* 42 U.S.C. § 405(g) (2012); *see, e.g., Higginbotham*, 405 F.3d at 335. "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (per curiam). A reviewing court must examine the entire record, including evidence favorable to the Commissioner as well as contrary evidence. *See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's]." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) (per curiam) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (per curiam)). If substantial evidence supports the Commissioner's findings, they are treated as conclusive and will be affirmed. 42 U.S.C. § 405(g) (2012); *Richardson v. Perales*, 402 U.S. 389, 390 (1971).

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner makes a disability determination by conducting a five-step sequential evaluation to determine whether: (1) the claimant is currently working; (2) the claimant has a "severe impairment"; (3) the impairment meets or equals an impairment listed in Appendix 1 of the regulations; (4) the claimant is capable of performing past relevant work; and (5) the claimant, after taking into account age, education, previous work experience, and residual functional capacity, is capable of performing any other work. 20 C.F.R. § 404.1520(a)(4) (2016); *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007). If the Commissioner makes a disability determination at any step in the process, the finding is conclusive and the analysis terminates. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The claimant bears the burden of proof in the first four steps of the analysis. *Id.* If the claimant can satisfy that burden, the Commissioner must then demonstrate that the claimant is capable of performing other work that exists in significant numbers in the national economy. *Id.* After making such a showing, the burden ultimately shifts back to the claimant to rebut the Commissioner's finding. *See Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

### III.  Facts

Plaintiff claims she became disabled on January 1, 2017, due to myriad health issues. Tr. 15, 17–18, 136. Plaintiff has a sixth-grade education and a previous work history primarily as a janitor and housekeeper. Tr. 21–22, 37.

At step one, the ALJ found Plaintiff has not engaged in "substantial gainful activity" since July 3, 2017—i.e., the application date. Tr. 17. The ALJ found at step two that Plaintiff has the

following severe impairments: "back impairments, osteoarthritis, diabetes, [and] obesity." *Id.* (emphasis omitted). Although Plaintiff also reported suffering from "anxiety and depression," the ALJ determined that these conditions are "nonsevere" "because they do not cause limitations or restrictions having more than a minimal effect on [her] . . . ability to do basic work activities and cause[] no more than 'mild' limitation in any of the functional areas." Tr. 18. Despite the ALJ finding severe impairments, the ALJ nevertheless found at step three that Plaintiff does not have an impairment or combination of impairments that are listed in, or that equal in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 18–19.

The ALJ assessed Plaintiff's residual functional capacity (RFC) and found that she has the ability "to perform light work as defined in 20 CFR 416.967(b) except [she] is limited to occasional stooping and frequent contact with the public and coworkers." Tr. 19. Relying on the testimony of a VE, the ALJ concluded that Plaintiff can perform "past relevant work as a Housekeeping Cleaner . . . ." Tr. 21–22 (emphasis omitted). Accordingly, the ALJ determined at step four that Plaintiff is not disabled. Tr. 22.

Plaintiff argues on appeal that the ALJ erred in three ways: (1) Plaintiff did not perform her past relevant work (PRW) as a housekeeping cleaner "at substantial gainful activity (SGA) levels"; thus, it cannot constitute PRW; (2) the ALJ's failure to perform "the legally required Psychiatric Review Technique (PRT)" constitutes legal error; and (3) the ALJ failed to account for all of Plaintiff's mental limitations in the RFC finding. Pl.'s Br. 1, ECF No. 18. The Court finds Plaintiff's first point of error has merit and therefore recommends remand on this issue.[2] Accordingly, the Court does not reach or consider points of error two and three.

---

[2] In recommending remand of this case for further administrative proceedings, the undersigned does not suggest that Plaintiff is, or that the ALJ should find her, disabled.

4

## IV. Discussion

Plaintiff contends that her earnings from prior jobs never rose to the level of SGA, and thus, as a matter of law, those jobs cannot constitute PRW. *Id.* at 3. According to Plaintiff, the SSA's own records reveal that "the most she earned in one year was $8,591.61 in 2010, or about $716.00 dollars per month," i.e., below the threshold for SGA. *Id.* at 4 (citing Tr. 166). Plaintiff argues that "the only time in the 15 years prior to the ALJ's decision" she had earnings worth mentioning "was her last job as a housekeeping cleaner at Lubbock Healthcare." *Id.* But even there, Plaintiff asserts, her earnings did not rise to the level of SGA or, at a minimum, were a mere $11.00 over the threshold. *Id.* at 4–6. In addition, Plaintiff alleges that the ALJ failed to consider her "impairment related work expenses (IRWE)." *Id.* at 6–7. This failure, Plaintiff avers, was error, particularly given her "very low earnings," which "were less than $11.00 from being presumptively considered non-SGA" in 2017. *Id.* at 7.

Alternatively, Plaintiff maintains that her work at Lubbock Healthcare "was an unsuccessful work attempt (UWA)," which cannot constitute SGA. *Id.* Based on the foregoing, Plaintiff argues "the ALJ's step 4 determination is defective as a matter of law and remand, at a minimum," is required. *Id.* at 8.

The Commissioner maintains the ALJ properly determined that Plaintiff's work as a housekeeping cleaner constituted SGA. Def.'s Br. 3–4, ECF No. 19. In the Commissioner's view, the SSA records reflect that at Lubbock Healthcare, Plaintiff earned "more than the monthly amount established to show [SGA]," i.e., that Plaintiff's 2017 earnings demonstrate she worked at SGA levels. *Id.* at 4–5. Moreover, the Commissioner contends that the ALJ was not required to inquire as to Plaintiff's IRWE, nor does Plaintiff's work at Lubbock Healthcare meet the requirements to be considered an UWA. *Id.* at 5–7. As a result, the Commissioner argues this

5

work constituted PRW, and "the ALJ did not need to proceed beyond step four of the sequential evaluation process." *Id.* at 7.

In reply, however, Plaintiff first observes that the Commissioner cited an outdated regulation in support of her argument that Plaintiff's work at Lubbock Healthcare is not an UWA. Pl.'s Reply 1–2, ECF No. 20. According to Plaintiff, applying the proper regulation demonstrates that the work was an UWA. *Id.* at 2–3. In addition, Plaintiff argues that even if she performed work at SGA levels in 2017, "the ALJ failed to fulfill his duty to analyze fully the issue of whether [the] work was PRW and to explain his reasons for finding PRW." *Id.* at 4. That is, in Plaintiff's view the ALJ should have considered both whether her work at Lubbock Healthcare was an UWA and whether she incurred any IRWE during that time. *Id.* at 4–5.

The record before the Court supports a remand finding on the ALJ's PRW determination alone. The ALJ concluded that Plaintiff had performed PRW as a housekeeping cleaner in part because she performed it "at a level of substantial gainful activity pursuant to [Social Security Ruling] 82-62." Tr. 22. In support, the ALJ cited Exhibits B5D (Certified Earnings Record, dated May 3, 2018), B6D (Detailed Earnings Query, dated May 11, 2018), B7D (Summary Earnings Query, dated May 11, 2018), and B2E (Disability Report-Adult, dated July 25, 2017). Tr. 22–24.

PRW is work that the claimant: (1) has performed "within the past 15 years"; (2) at the SGA level; and (3) "lasted long enough for [her] to learn to do it." 20 C.F.R. §§ 416.960(b)(1), 416.965(a); *Copeland v. Colvin*, 771 F.3d 920, 924 (5th Cir. 2014) (citations omitted). Plaintiff only challenges element two—i.e., whether she performed work at SGA levels. Pl.'s Br. 3–9. SGA is defined as "work activity that is both substantial and gainful." 20 C.F.R. § 416.972. "Substantial work activity is work activity that involves doing significant physical or mental activities." *Id.* § 416.972(a). Further, "[g]ainful work activity" is that which the claimant does

"for pay or profit." *Id.* § 416.972(b). Under applicable regulations, the Commissioner must "consider all of the medical and vocational evidence in [a claimant's] file to decide whether or not [she has] the ability to engage in substantial gainful activity." *Id.* § 416.971. "Generally, if [a claimant] worked for substantial earnings, [the Commissioner] will find that [she is] able to do substantial gainful activity. However, the fact that [a claimant's] earnings were not substantial will not necessarily show that [she is] not able to do substantial gainful activity." *Copeland*, 771 F.3d at 924 (quoting §§ 404.1574(a)(1), 416.974(a)(1)).

Where a claimant's "monthly earnings exceed those indicated in the chart and related regulations at sections 404.1574(b)(2) and 416.974(b)(2)," the Commissioner considers that as presumptive SGA. *Id.*; *see Craven v. Berryhill*, Civil Action No. 4:18-cv-00008-Y-BP, 2018 WL 4658530, at *7 (N.D. Tex. Sept. 11, 2018) ("[I]f [claimant's] earnings are more than the amount listed in the Commissioner's guidelines, then it is presumptive proof of substantial gainful activity."), *R. & R. adopted by* 2018 WL 4637285 (N.D. Tex. Sept. 27, 2018). Conversely, "the Commissioner 'will generally consider'" earnings below the amounts listed in, inter alia, § 416.974(b)(2) as non-SGA and "will generally not consider other information in addition to [ ] earnings."³ *Copeland*, 771 F.3d at 924 (quoting §§ 404.1574(b)(3), 416.974(b)(3)). That is, where a "claimant's earnings fall below the earnings guidelines for SGA contained in" § 416.974(b)(2), "a rebuttable presumption of non-SGA arises." *Id.* at 925; *see also id.* at 927 ("We hold that a rebuttable presumption against substantial gainful activity arises where a disability claimant's earnings are below the threshold set by the regulations.").

---

³ The regulations, "list several exceptions to this generalization," but they are inapplicable here. *Copeland*, 771 F.3d at 924–25 (citing §§ 404.1574(b)(3)(iii), 416.974(b)(3)(ii)) (discussing the exceptions).

7

*1. Based on her average monthly earnings, Plaintiff performed work at the SGA level in 2017.*

Plaintiff first argues that her average monthly earnings at any job never met the SGA threshold; therefore, she cannot have performed PRW. *See* Pl.'s Br. 4. The parties only address two years of earnings in this appeal—2016 and 2017—when Plaintiff was employed at Lubbock Healthcare.[4] *See id.* at 4–5; Def.'s Br. 4–6. In 2016, individuals earning more than $1,130 per month engaged in SGA, and for 2017, $1,170 per month. *Substantial Gainful Activity*, Soc. Sec. Admin., https://www.ssa.gov/OACT/COLA/sga.html (last visited July 29, 2021); *see* § 416.974(b)(2)(ii). The ALJ relied in part on Exhibits B6D and B7D, which reflect that while employed at Lubbock Healthcare, Plaintiff earned $3,428.13 in 2016 and $2,362.69 in 2017. Tr. 166; *see* Tr. 164. Further, the ALJ cited Exhibit B2E, in which Plaintiff reported working at Lubbock Healthcare until January 2017.[5] Tr. 173.

Plaintiff initially argues that, "[p]ursuant to SSR 83-35, earnings are generally averaged over the actual period of time in which work was performed." Pl.'s Br. 5. Under this calculation, Plaintiff earned $965.14[6] per month (($3,428.13 + $2,362.69) ÷ 6), which "is under the earnings thresholds for 2016 and 2017." *Id.* SSR 83-35 specifically provides, however, that "[w]hen an individual works over a period of time during which the SGA level changes, earnings are not averaged over the entire period of work involved; rather, *they are averaged over each period for which a different SGA level applies.*" *Titles II & XVI: Averaging of Earnings in Determining*

---

[4] As discussed *infra* at pages 12–14 and note 10, Plaintiff has demonstrated that her most recent prior employment at Lubbock Healthcare may have constituted an UWA. This finding, however, does not foreclose the possibility that Plaintiff may have engaged in SGA at other jobs that ultimately constitutes PRW.

[5] In determining her end date with Lubbock Healthcare, Plaintiff and the Commissioner seemingly rely on Plaintiff's Work History Report, where she reported working through February 2017. Tr. 168; *see* Pl.'s Br. 5–6; Def.'s Br. 4–5. As discussed herein, even under this more conservative timeline (i.e., six months as opposed to five months' employment), Plaintiff worked at an SGA level.

[6] Plaintiff asserts that under this calculation, she earned an average of $960.11 per month, but she does not explain how she arrived at this calculation. *See* Pl.'s Br. 5.

8

*Whether Work is Substantial Gainful Activity*, SSR 83-35, 1983 WL 31257, at *4 (S.S.A. Jan. 1, 1983) (emphasis added). Other than arguing that "break[ing] the earnings into separate period[s]," i.e., four months in 2016 and two months in 2017, "improperly penalizes [her]," Plaintiff provides no legal basis for calculating her average monthly earnings in a manner other than that provided by the regulations. *See* Pl.'s Br. 5. The Court will not evaluate her claim based on the suggested methodology.

Using the calculation provided by SSR 83-35 (averaging earnings over each period), the Commissioner concedes that Plaintiff's average monthly earnings for 2016 fell below the SGA threshold. *See* Def.'s Br. 4–5. For 2017, however, the Commissioner contends, and the record reflects, that Plaintiff earned an average of $1,181.35 per month ($2,362.69/2), which is $11.35 over the threshold of $1170 per month. *Id.* Plaintiff likewise acknowledges that she earned $11 more than the 2017 threshold. Pl.'s Br. 5–6; Pl.'s Reply 4. Thus, Plaintiff presumptively engaged in SGA level work in 2017. *See, e.g., Jackson v. Saul*, C/A No.: 1:19-2683-SVH, 2020 WL 4813322, at *24–26 (D.S.C. Aug. 19, 2020) (finding plaintiff's earnings supported ALJ's decision that her job constituted PRW even though ALJ did not question plaintiff as to how long she performed the job and the record contained conflicting information concerning her employment length); *Bryant P. v. Comm'r of Soc. Sec. Admin.*, Civil Case No. 3:19-CV-402-L-BK, 2020 WL 1326705, at *3 (N.D. Tex. Mar. 3, 2020) (observing that plaintiff's earnings for two months were "above the SGA monthly cap" and such employment therefore constituted PRW), *R. & R. adopted by* 2020 WL 1326274 (N.D. Tex. Mar. 20, 2020); *Craven*, 2018 WL 4658530, at *7 ("Because [plaintiff's] earnings are greater than the guideline amount, then her work as a substance abuse counselor is presumptively substantial gainful activity.").

9

Although her earnings exceeded the 2017 threshold, Plaintiff nevertheless asserts that the ALJ should have determined her dates of employment at Lubbock Healthcare and "how much she earned each pay period." Pl.'s Br. 6. Plaintiff, however, self-reported working at Lubbock Healthcare, at the latest, through February 2017. Tr. 168; *see also* Tr. 174 (In Exhibit B2E, which is what the ALJ relied on, Plaintiff reported working at Lubbock Healthcare until *January* 2017.). Even if the ALJ had determined the precise date "she stopped working" at Lubbock Healthcare, as Plaintiff argues he should have, Plaintiff fails to demonstrate how this date would have resulted in non-SGA level work.[7] *See* Pl.'s Br. 6. That is, even under the most conservative calculation, Plaintiff earned more than the SGA monthly threshold in 2017. Thus, substantial evidence supports the finding that Plaintiff worked at SGA levels in 2017. *See, e.g., Bryant P.*, 2020 WL 1326705, at \*3 ("Thus, under the most conservative calculation, Plaintiff worked as a forklift operator for two months and earned $1,126.50 per month—above the SGA monthly cap"—and his work constituted PRW.).

2. *The ALJ did not err by failing to deduct IRWE from Plaintiff's 2017 earnings.*

Plaintiff further avers that in calculating her earnings for purposes of determining SGA, the ALJ was "obligated by law to consider the possibility of [IRWE]." Pl.'s Br. 6–7 (citing various provisions for support). In Plaintiff's view, given that she "had very low earnings," which "were less than $11.00 from being presumptively considered non-SGA, the ALJ absolutely and unequivocally should have explored the *possibility* of any IRWE in 2017." *Id.* at 7 (emphasis added).

---

[7] To the contrary, an earlier end date with Lubbock Healthcare would logically result in higher monthly average earnings.

10

The regulations provide that SSA "will subtract the reasonable costs to [claimant] of certain items and services which, because of [her] impairment(s), [she] need[s] and use[s] to enable [her] to work." 20 C.F.R. § 416.976(a). Under § 416.976(b), the SSA will deduct IRWE if the claimant: (1) is "otherwise disabled"; (2) must purchase "certain items or services in order to work" due to the severity of her impairment(s); (3) pays for the cost of the item or service in cash and "in accordance with" the requirements in § 416.976(d). § 416.976(b)(1)–(5). IRWE include "[p]ayments for drugs and medical services," which encompass "diagnostic procedures," used "to control [the claimant's] impairment(s)." *Id.* § 416.976(c)(5)(i). "The drugs or services must be prescribed (or utilized) to reduce or eliminate symptoms of [claimant's] impairment(s) or to slow down its progression. The diagnostic procedures must be performed to ascertain how the impairment(s) is progressing or to determine what type of treatment should be provided for the impairment(s)." *Id.* Examples of such "deductible drugs and medical services are . . . tests to determine the efficacy of medication on a diabetic condition." *Id.* § 416.976(c)(5)(ii).

Plaintiff contends that at the administrative hearing, she reported taking "multiple medications for diabetes, high blood pressure, and numbness and tingling in the feet," which triggered the ALJ's duty to further develop the record as to possible IRWE. Pl.'s Br. 6. As the Commissioner observes, however, "at no point, even now, has [Plaintiff] alleged that she incurred" IRWE—she merely reports taking medication.[8] Def.'s Br. 5; *see* Tr. 32–33 (testifying at the administrative hearing that she takes various medications), 175 (Disability Report-Adult, dated July 25, 2017, in which Plaintiff reported taking certain medications but made no mention of any out-of-pocket cost sustained in obtaining.). Stated differently, Plaintiff does not allege that she

---

[8] Plaintiff makes the conclusory assertion that the fact she was taking "multiple medications" is "a clear indication that there were indeed IRWEs." Pl.'s Reply 4. The Court disagrees. Just because Plaintiff takes certain medication does not mean that they qualify for deduction, as described in § 416.976.

11

paid cash out-of-pocket for the medication and, even if she did, that the expenses meet the other requirements in § 416.976(b).

Moreover, the record reflects that SSA determined at its initial decision, and again upon reconsideration, that Plaintiff did not have any IRWE. Tr. 40, 52. Plaintiff points to no evidence in the record (e.g., receipts, statements concerning out-of-pocket costs, etc.) indicating she actually incurred qualifying IRWE related to her medications. Thus, the Court finds the ALJ was not required to deduct IRWE in this instance. *See Dufour v. Colvin*, No. 1:13–CV–01041, 2014 WL 3385104, at *3 (W.D. La. July 9, 2014) (finding ALJ did not err by finding plaintiff's expenses did not qualify as IRWE in part because the record lacked evidence demonstrating "payments made for the allegedly required items and/or services," e.g., "receipts or invoices showing [the cancelled] checks [plaintiff submitted] correlate[d] with the items or the alleged amounts" of purported IRWE); *cf. Fox v. Saul*, No. 17 C 3433, 2020 WL 6894935, at *3 (N.D. Ill. Nov. 24, 2020) (observing that ALJ's failure to further develop the record concerning IRWE constituted error, where claimant attested in a Work Activity Report that she was spending her "own money for . . . services" related to medical conditions and there was ample evidence in record that claimant in fact paid out-of-pocket); *Albrecht v. Astrue*, NO. CIV 11-407 CG, 2017 WL 9360904, at *6–7 (D.N.M. Feb. 7, 2017) (finding claimant's testimony at the administrative hearing "that her medical costs in 2007 were very high and that she had to pay approximately $3,000 out of pocket for medical care . . . triggered the ALJ's duty to develop the record with regard to [claimant's] IRWE's [sic]"); *Allen v. Astrue*, No. CIV. 08–5071–RHB, 2009 WL 2253815, at *3 (D.S.D. July 28, 2009) (concluding ALJ erred in finding there was no evidence to support plaintiff had IRWE, where record contained "detailed pharmacy records showing . . . what plaintiff paid for the

12

particular prescription," as well as "ample evidence connecting particular prescriptions with plaintiff's alleged impairments").

### 3. The record reflects that Plaintiff's employment at Lubbock Healthcare may have constituted an UWA.

Finally, Plaintiff argues that even if her earnings at Lubbock Healthcare would otherwise necessitate a finding that she engaged in SGA-level work, "it would still not be SGA because the work was an" UWA. Pl.'s Br. 7. Plaintiff asserts the regulations provide that "[i]f the work is a UWA, it cannot be SGA." *Id.* (citing 20 C.F.R. § 416.974(c) and SSR 84-25).

Under § 416.974(c), work a claimant has done "will not show that [she] [is] able to do substantial gainful activity if, after working for a period of 6 months or less, [she] [was] forced by [her] impairment to stop working" *and* the claimant meets the following applicable conditions:

(1) There was a "significant break in the continuity of [her] work"—i.e., if the claimant was "out of work at least 30 consecutive days."

(2) The claimant worked six months or less and stopped working "because of [her] impairment."

§ 416.974(c)(1)–(3);[9] *see Norton v. Saul*, CIVIL ACTION NO. 19-9307, 2020 WL 1067011, at *8 (E.D. La. Feb. 4, 2020) (summarizing the three factors the ALJ must consider in evaluating whether a claimant's job constitutes an UWA), *R. & R. adopted by* 2020 WL 1065114 (E.D. La. Mar. 5, 2020). That is, an UWA cannot constitute SGA. § 416.974(c); *see Morales v. Apfel*, 225 F.3d 310, 319 (2d Cir. 2000) ("An attempt to work that ultimately fails because of the symptoms of the disability is not substantial gainful activity.").

---

[9] The Commissioner cites an outdated version of § 416.974(c) in support of her argument that Plaintiff's job at Lubbock Healthcare does not constitute an UWA. Def.'s Br. 6. The Commissioner argues that because Plaintiff worked at Lubbock Healthcare between three and six months, Plaintiff must meet the requirements of § 416.974(c)(4)(i)–(iv). *Id.* But that specific provision was eliminated and the current version—which became effective November 16, 2016, and applies to Plaintiff's claim—does not distinguish between work performed between three and six months. *See* § 416.974(c).

13

As discussed above, Plaintiff reported working for Lubbock Healthcare between September 2016 and February 2017—i.e., no longer than six months. Tr. 168. At the administrative hearing, Plaintiff testified that she discontinued working at Lubbock Healthcare "[b]ecause of [pain in her] back and [her] knees." Tr. 29; *see* Tr. 30 (In response to the ALJ's question asking, "The pain was so bad you had to quit work?" Plaintiff responded, "Yes."). Further, in the Disability Report-Adult, Plaintiff stated that she stopped working "[b]ecause of [her] condition(s)," which she listed as including obesity, back problems, arthritis, and problems in her "[w]eight bearing joints (knee, hip)." Tr. 172–73. The ALJ relied on the foregoing Report in concluding that Plaintiff's job at Lubbock Healthcare constituted PRW. *See* Tr. 22. In addition, Plaintiff's earnings records and Work History Report indicate that prior to her job at Lubbock Healthcare, Plaintiff had not worked in approximately two years. *See* Tr. 163, 166, 168.

In sum, the record indicates that Plaintiff's employment at Lubbock Healthcare may constitute an UWA under § 416.974(c), but the ALJ made no specific finding in this regard. *See* Tr. 22. Substantial evidence does not support the ALJ's conclusion that Plaintiff's six-month employment at Lubbock Healthcare was SGA because in making this determination, he did not consider whether it constituted an UWA. The undersigned therefore finds that the ALJ's step four finding was flawed. The undersigned therefore recommends that the district judge remand the case on this issue.[10] *See, e.g.*, *Norton*, 2020 WL 1067011, at *8 (finding ALJ's conclusion that plaintiff's three previous jobs were not UWAs was erroneous because ALJ did not consider the

---

[10] The ALJ concluded that Plaintiff "is capable of performing past relevant work as a Housekeeping Cleaner." Tr. 21. The ALJ then found "the above *jobs* to be" PRW. Tr. 22 (emphasis added). Plaintiff apparently only has previous work experience as a housekeeping cleaner and janitor. *See* Tr. 37. Thus, it is possible that the ALJ determined Plaintiff's employment in prior years as a housekeeping cleaner (i.e., employment other than at Lubbock Healthcare) constituted SGA and therefore amounted to PRW. But without specific findings from the ALJ, or evidence concerning these prior jobs, including the length of employment, the undersigned cannot determine whether the ALJ limited his finding of PRW to Plaintiff's most recent employment at Lubbock Healthcare or whether he concluded that Plaintiff had PRW from previous positions. On remand, the ALJ may develop the record as to whether Plaintiff has any other PRW.

14

three factors listed in 20 C.F.R. § 404.1574(c) (the companion regulation to § 416.974) and therefore remand was required for a "proper analysis"); *Craven*, 2018 WL 4658530, at *7–8 (recommending remand where claimant demonstrated her work was not SGA but was instead an UWA); *see also Hall v. Saul*, No. 19-CV-3019-LTS-KEM, 2020 WL 5229539, at *9 (N.D. Iowa May 27, 2020) ("The ALJ should have further developed the record regarding whether [plaintiff's] past work . . . constituted an unsuccessful work attempt and specifically, whether" plaintiff stopped working due to his impairment. "On remand, the ALJ may contact [plaintiff's] past employer; obtain [plaintiff's] medical records from 2005; or obtain opinion evidence from [plaintiff's] medical providers regarding [plaintiff's] reasons for ending his employment."), *R. & R. adopted by* 2020 WL 3121226 (N.D. Iowa June 12, 2020).

### V. Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Court reverse the Commissioner's decision and remand this action for further proceedings.

### VI. Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2017); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge

that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: July **30**, 2021.

_____
D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE

16